United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARY BOLTON, as Trustee of the Arthur A. Bolton Revocable Trust Dated May 20, 2000, the Trust A - Marital Trust, and Trust B - Family Trust, and as Executor of the Estate of Arthur Bolton,

Plaintiff,

v.

LUMBERMANS MUTUAL CASUALTY COMPANY, an Illinois corporation,

Defendant.

No. 05-1109 SC

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. **INTRODUCTION**

Plaintiff Gary Bolton ("Plaintiff" or "Bolton") filed this action on March 17, 2005 against Defendant Lumbermans Mutual Casualty Company ("Defendant" or "Lumbermans") seeking, inter alia, to compel Lumbermans to defend Bolton against a pending lawsuit brought by the City of Redwood City against Bolton (the "Redwood City action") for costs and damages resulting from the release of toxic chemicals into the soil beneath a shopping center in Redwood City, California. Bolton has filed a motion for summary judgment seeking a judicial determination establishing Defendant's duty to defend him in connection with the Redwood City action. Lumbermans has filed a cross-motion for summary judgment seeking a ruling declaring that they do not owe Bolton a duty to defend and that their refusal to defend Bolton was therefore not

United States District Court
For the Northern District of California

in bad faith, as Bolton has alleged in his Complaint. After having considered the arguments and evidence submitted by the parties, the Court hereby DENIES Defendant's motion and GRANTS Plaintiff's motion.

## II. BACKGROUND

Beginning in the early 1940s, Arthur Bolton operated a dry cleaning business known as "Roy's" on property he owned at 1100 El Camino Real, Redwood City, California. See Defendant's Memorandum in Support of Motion for Summary Judgment at 4 ("Def. Mem."); Plaintiff's Memorandum in Support of Motion for Summary Judgment at 1 ("Pl. Mem."). In 1970, Arthur Bolton sold the dry cleaning business to Eno Barbitta ("Barbitta"), but retained ownership of the real property on which Roy's was situated. See Deposition of Eno Barbitta at 7:7-13 ("Barbitta Depo.").

Barbitta leased the property from Arthur Bolton during the time he owned Roy's, a period that ended in 1983 when Barbitta sold Roy's to Bong Ho Lee and Bok Nim Lee.[1] Id. at 8:13-16; Pl. Mem. at 2. As a part of the lease agreement, Barbitta was obligated to procure a comprehensive general liability insurance policy, naming Arthur Bolton as an additional named insured with respect to all operations undertaken at the property on which Roy's was located. See Pl. Mem. at 2. For the years 1981-82 and 1982-83, Barbitta procured such insurance coverage with Lumbermans, naming Arthur Bolton as a named additional insured under policy numbers 1SJ 050 583 and 2SJ 050 583 (collectively,

[1] Neither of these individuals is involved in the instant dispute.

United States District Court
For the Northern District of California

the "Lumbermans Policies"). Id.

In the 1990s, the California Regional Water Quality Control Board ("CRWQCB") began investigating the contamination of soil and groundwater in the vicinity of the Sequoia Station Shopping Center, located across El Camino Real from Roy's. See Complaint, City of Redwood City v. Arthur Bolton, No. C-02-2705 at 1 ("Redwood City Complaint"). Specifically, laboratory tests of groundwater, soil, and gas from around Sequoia Station have allegedly revealed "contamination by various hazardous substances, primarily tetrachloroethene (PCE), trichloroethene (TCE), and dichloroethene (DCE)." Id. at 2. As a result, the City of Redwood City filed suit against Arthur Bolton on June 5, 2002, seeking cost recovery, contribution, and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as bringing several state law claims. Id. at 5-11. In July 2003, Redwood City amended its Complaint to reflect the fact that Arthur Bolton was deceased, and that the proper Defendant in the Redwood City action was therefore Arthur Bolton and Gary Bolton, as Trustee of two revocable trusts dated May 20, 2000. See Amended Complaint, City of Redwood City v. Arthur Bolton, No. C-02-2705 SC ("Redwood City Amended Complaint").

Bolton, through his attorney, tendered his defense of the Redwood City action to Lumbermans under the Lumbermans Policies in June 2002, and again tendered defense of the Redwood City action to Lumbermans in August 2003 after Redwood City filed its Amended Complaint. See Declaration of David Isola ¶6 ("Isola Decl."). By

United States District Court
For the Northern District of California

letter dated March 21, 2005, Lumbermans, through its third party claim administrator, Cavell USA, Inc., declined to defend or indemnify Bolton in the Redwood City action. See Declaration of Tiffany Troisi, Ex. 2 ("Troisi Decl."). In refusing to defend or indemnify Bolton in the Redwood City action, Lumbermans relied on the fact that the Lumbermans policies contained an exclusion for "environmental property damage resulting from the releases of chlorinated solvents by the dry cleaning operations on the Bolton property into the sanitary sewer line." Id. at 2. Furthermore, while acknowledging that the environmental property damage exclusion does not apply where the "discharge, dispersal, release or escape is sudden and accidental," Defendant asserted in its denial of coverage that "the allegations against Bolton in the [Redwood City action] do *not* contain any assertions whatsoever that there were ever any "sudden" or "abrupt" releases of the chlorinated solvents at issue, nor that the contamination was caused as a result of any 'sudden and accidental' releases." Id. at 3.

Subsequently, on May 26, 2005, counsel for Plaintiff sent a letter to counsel for Lumbermans, encouraging Lumbermans to reconsider its denial of coverage in light of the information discovered during the deposition of Barbitta, conducted May 4, 2005. See Troisi Decl. Ex. 4 & 5. Bolton apparently felt that Barbitta's deposition revealed several ways in which the hazardous substances found in the vicinity of the shopping center may have been discharged into the sewer line through activities at Roy's that fall within the "sudden and accidental" exception to the

United States District Court
For the Northern District of California

environmental property damage exclusion to the Lumbermans Policies. Id. This effort was evidently unavailing, as the parties have filed cross-motions for summary judgment seeking a judicial determination of the rights and duties accorded the parties under the Lumbermans Policies and applicable law.

**III. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Similarly, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial...since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A genuine issue of fact exists where the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986). The Court's role in adjudicating a motion for summary judgment is not to make credibility determinations, and the "evidence of the non-moving party is to be believed, and all justifiable inferences are to be

United States District Court
For the Northern District of California

drawn in its favor." Id. at 255.

## IV. DISCUSSION

Under California law, an insurer has a duty to defend an insured against claims brought against the insured, so long as at least one of the claims "potentially seeks damages within the coverage of the policy." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (Cal. 1966); see also Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 295-96 (Cal. 1993); Vann v. Travelers Companies, 39 Cal. App. 4th 1610, 1614 (Cal. Ct. App. 1995). The duty to defend is considerably broader than the duty to indemnify, and therefore will obligate the insurer to defend against claims in which no damages are ultimately awarded. See Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (Cal. 1993). "Facts merely tending to show that the claim is not covered, or may not be covered but are insufficient to eliminate the possibility that the resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." Montrose, 6 Cal. 4th at 300.

In practice, the insured will satisfy his initial burden by demonstrating that a bare possibility for coverage exists, even if the evidence suggests, but does not conclusively establish, that the loss is not covered. See id. at 299-300. In assessing whether such a bare possibility for coverage exists, the insurer shall make reference to the terms of the policy, the pleadings, and any additional evidence available to the insurer at the time of tender. See id. at 296; Vann, 39 Cal. App. 4th at 1614-15.

//

United States District Court
For the Northern District of California

If the insured succeeds in carrying his initial burden of demonstrating the potential for coverage, the insurer may avoid being bound by the duty to defend only by showing that the third party claims cannot possibly fall within the scope of the policy. See Montrose, 6 Cal. 4th at 295; Vann, 39 Cal. App. 4th at 1614. At the summary judgment stage, an insurer must be able to negate coverage as a matter of law. See Maryland Cas. Co. v. National American Insurance Co. of Calif., 48 Cal. App. 4th 1822, 1832 (Cal. Ct. App. 1996).

A. Lumbermans's Motion for Summary Judgment

Lumbermans essentially makes three arguments in support of its motion for summary judgment. First, Lumbermans argues that the pleadings and additional evidence available at the time of tender do not reveal any potential way in which Bolton could be covered by the Lumbermans Policies.[2] Def. Mem. at 6. Second, Defendant contends that even after considering additional evidence obtained through the deposition of Barbitta, the totality of information available still did not suggest any possible way in which the Lumbermans Policies would cover Bolton for damages he might be responsible for as a result of the Redwood City action.

---

[2] At the time of tender, the Redwood City Complaint and Amended Complaint alleged, in relevant part, that "On information and belief, dry cleaning operations conducted at Defendant's property have resulted in discharges of PCE, among other materials, to the sanitary sewer beneath El Camino Real. On information and belief, the contamination now impacting the Shopping Center, Defendant's property, and the subsurface beneath El Camino Real, was caused, at least in part, by discharges from the dry cleaning operations conducted at Defendant's property. Redwood City's investigation of other possible sources is on-going." Redwood City Complaint ¶¶ 9-10; Redwood City Amended Complaint ¶¶ 12-13.

Id. at 10. Finally, Lumbermans has included a single paragraph arguing that the discharges occurred prior to the time when the Lumbermans Policies became effective, and that Bolton is therefore precluded from claiming any coverage under the policies. Id. at 18.

The Court disagrees. Looking back to the original time of tender, Lumbermans was aware only of the Redwood City Complaint, the Answer, and the terms of the Lumbermans Policies. Even after Bolton again tendered his claim to Lumbermans over a year later, no additional information had been uncovered bearing on the question of whether the claim would ultimately be covered by the Lumbermans Policies.

Looking to both the Redwood City Complaint and the Redwood City Amended Complaint, it is clear that both employ extremely broad language that can reasonably be read to encompass a means of pollution that would fall within the scope of the policies. See Redwood City Complaint, Redwood City Amended Complaint. Neither document specifically identifies the means of contamination, whether the contamination was sudden or gradual, or even who was definitively responsible for the contamination. See Redwood City Complaint ¶ 10; Redwood City Amended Complaint ¶ 13. While the Court is well aware that it must refrain from engaging in speculation so as to invent a cause of injury that would fall within the coverage of the policy, see Gunderson v. Fire Ins. Exchange, 37 Cal. App. 4th 1106 (Cal. Ct. App. 1995), so too must Defendant recognize that the standard for avoiding the duty to defend requires an insurer to conclusively establish that the

United States District Court
For the Northern District of California

claim cannot fall within the scope of the policy based upon the information known at the time of tender. See STAEFA Control-System Inc. v. St. Paul Fire & Marine Ins. Co., 847 F. Supp. 1460, 1467 (N.D. Cal. 1994). Even if it is true, as Defendant contends, that "there is no fact alleged in the underlying litigation, nor in the additional evidence, that there was a sudden and accidental release by Bolton," that would not entitle Lumbermans to the relief requested, especially at the summary judgment stage. See Montrose, 6 Cal. 4th at 300; Maryland Cas. Co., 48 Cal. App. 4th at 1832.

Similarly, even if Lumbermans is correct in its contention that Barbitta's deposition did not assist Plaintiff's case by revealing ways in which the contaminating chemicals suddenly and accidentally entered the sewer, that fact would not suffice to meet the burden placed on an insurer seeking to avoid its duty to defend an insured. Rather, so long as Lumbermans is unable to conclusively establish that the underlying claim cannot fall within the ambit of the policies, it will be bound to defend Plaintiff. See Montrose, 6 Cal. 4th at 295; Vann, 39 Cal. App. 4th at 1614.

Finally, with respect to Defendant's third argument--that the contamination had to have occurred prior to the period covered by the policies--the Court notes that Defendant has based its entire argument on Barbitta's deposition testimony, who could not recall ever having spilled hazardous chemicals into either of the two drains connecting Roy's to the sewer line. See Def. Mem. at 18-19. Because Barbitta testified that no such spillage occurred,

the argument goes, the contamination could not possibly be within the scope of the Lumbermans Policies because all other witnesses who might have knowledge of the operations at Roy's are either deceased or unable to competently testify. Id. The logical chasm between the substance of Barbitta's testimony and the legal conclusion deduced therefrom by Lumbermans is too great to be bridged by mere inference, especially where, as here, all inferences are to be drawn against Lumbermans as the moving party. See Anderson, 477 U.S. at 255. Simply because Barbitta could not recall an event having happened does not mean it conclusively did not happen--to so find would be to credit Barbitta's testimony, a determination precluded at the summary judgment phase--and it certainly does not mean that the contamination, whatever its cause, was conclusively outside the scope of the policies. Accordingly, the Court declines to grant Defendant summary judgment on this ground.

In addition to the foregoing, the Court notes several facts that weigh against granting Defendant's motion. First, discovery in the Redwood City action remains ongoing and the Court has not been presented with any information by way of motion or otherwise that would shed light on the source of the contamination or the means by which the area under the shopping center came to be contaminated. Second, the evidentiary record in the instant matter is similarly sparse. Finally, Bolton has proffered the affidavit of Paris A. Hajali, Ph.D., who has asserted that, in his professional opinion, the source of the contamination is inconclusive and might be attributable to more than one origin.

United States District Court
For the Northern District of California

See Affidavit of Paris A. Hajali ("Hajali Aff."). While the Court is aware that the possibility exists that the underlying claims may well be shown eventually to be outside the scope of the Lumbermans Policies, Defendant has not conclusively established that fact, and certainly cannot prevail as a matter law, as it is required to do at this stage. See Maryland Cas. Co., 48 Cal. App. 4th at 1832.

As for Defendant's claim that it is entitled to a judgment declaring that its declination to defend Bolton was not made in bad faith, the Court notes that Defendant's argument is premised entirely on the presumption that the Court will find in Lumbermans's favor on the duty to defend issue. See Def. Mem. at 19-20. Since the Court has found that Lumbermans does have a duty to defend Bolton in connection with the Redwood City action, Defendant's argument is without merit. Accordingly, the Court declines to rule that Defendant's refusal to defend Bolton was not made in bad faith. However, since Bolton has not made a corresponding motion seeking a determination that the refusal was in bad faith, and since the Court has not been presented with any evidence bearing on this issue, the Court's ruling on the instant motion is not a conclusive resolution of the bad faith issue, which remains an open one in this dispute.

B. Bolton's Motion for Summary Judgment

Because the Court finds that Lumbermans has failed to conclusively demonstrate by reference to undisputed facts that the injuries complained of in the Redwood City action are outside the scope of the Lumbermans Policies, the duty to defend has been

established. See American Cyanamid Co. v. American Home Assur. Co., 30 Cal. App. 4th 969, 975 (Cal. Ct. App. 1994), citing Horace Mann Ins. Co., 4 Cal. 4th at 1085. The duty continues for only so long as Lumbermans is unable to conclusively establish non-coverage under the Lumbermans Policies, however, and Defendant will therefore be afforded the opportunity to terminate its duty if, at some point in the future, it can prove inapplicability of the policy coverage to the claims alleged in the Redwood City action. See Haskel, Inc. v. Sup. Ct., 33 Cal. App. 4th 963, 977-78 (Cal Ct. App. 1995). Until that time, however, Lumbermans must furnish Bolton with an adequate defense, including reasonable costs incurred by Bolton up to the present in defending against the Redwood City action. See Aerojet-General Corp. v. Transport Indem. Co., 17 Cal. 4th 38, 64 (Cal. 1997).

**V. CONCLUSION**

California law imposes a broad duty on insurers to defend their insured in connection with claims brought by third parties, where, as here, the claims might potentially be covered by insurance policies provided by insurers. This broad duty has been well defined by both state and federal courts applying California law for decades, and is undoubtedly considered by insurers when determining policy premiums and limitations. While the Court is aware that it must evaluate all available evidence in determining whether the duty to defend applies, and may not engage in speculation so as to create a phantom basis for coverage that finds no support in the evidence, the Court is similarly aware of the wide latitude and deference granted to an insured seeking to

United States District Court
For the Northern District of California

shift the burden of defending against a lawsuit to his insurer. Where, as here, it cannot be said that the claims advanced by Redwood City against Bolton will conclusively be outside the scope of the Lumbermans Policies, the Court is bound to order Defendant to defend Bolton against those claims until such time as conclusive proof demonstrating non-coverage is proffered and undisputed. Accordingly, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: January 23, 2006

UNITED STATES DISTRICT JUDGE